IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.

RECEIVED
IN ALEXANDRIA, LA.

MAY - 7 2010

TONY R. MOORE, CLERK
BY _____
                DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DERRICK JEROME ALLEN,
          Plaintiff

VERSUS

KENNETRIA JONES, et al.,
          Defendants

CIVIL ACTION
SECTION "P"
NO. 08-CV-01731

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Derrick Jerome Allen ("Allen") on November 14, 2008 (Doc. 1). The named defendants are Kennetria Jones ("Jones")(a corrections officer employed at Winn Correctional Center ("WCC") in Winnfield, Louisiana), Timothy Wilkinson ("Wilkinson")(warden of WCC), and Captain Chatman (a corrections officer employed at WCC).[1] Allen contends that, while he was incarcerated in WCC on March 10, 2008, Jones stopped him from entering the law library, for which he had a pass, and ordered him to go to church. When Allen refused to go to church, Jones and Chatman charged Allen with aggravated

---

[1] The other named defendants, Randy Olliff, Mona Heyse, and Corrections Corporation of America, were dismissed from this action on September 8, 2009 (Doc. 20).

disobedience. Allen also contends Jones was acting pursuant to a new policy instituted by Warden Wilkinson of forcing inmates to attend church services. Allen also alleges he was transferred to the Louisiana State Penitentiary in Angola, Louisiana in retaliation for having been granted permission by this court to assist another inmate (Peter Alfred) with his legal work. For relief, Allen asks for a jury trial, monetary damages, costs, injunctive relief, and to be transferred back to WCC.

Defendants answered the complaint (Doc. 19). Allen and defendants filed cross-motions for summary judgment (Docs. 34, 42). Allen also filed a motion for judgment on the pleadings (Doc. 61). The parties' motions are now before this court for disposition.

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be

2

entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory

3

allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

## Law and Analysis

Allen contends and shows in his affidavit and statement of undisputed facts (Doc. 34) that, on March 10, 2008, defendants Jones and Chatman forced him to either attend the church service in the chapel or receive a disciplinary write-up and did not allow him to enter the law library, despite the fact that he had a pass for the law library on that date.  Allen alleges Warden Wilkinson instituted a policy of forcing religion on the inmates.  Allen further states in his affidavit that he had been given permission to represent Peter Alfred in a lawsuit against WCC and Warden Wilkinson (Doc. 34).  Allen states in his affidavit that he was placed in lockdown for four days,[2] until March 14, 2008, when the disciplinary board dismissed the aggravated disobedience charge against him (Doc. 34).  Allen states in his statement of undisputed facts that he was denied access to the courts via the law library

---

[2] Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration, and the prison officials' decision to transfer an inmate to more restrictive quarters, even for non-punitive reasons, is well within the broad discretion the courts grant them.  Hewitt v. Helms, 459 U.S. 460, 479, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1983).  Also, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995); Pichardo v. Kinker, 73 F.2d 612, 613 (5th Cir. 1996).

4

while he was in lockdown (Doc. 34).

Inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987), and cases cited therein. The Establishment Clause provides that "congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The Establishment Clause applies to state governments through the Fourteenth Amendment. Board of Education v. Grumet, 512 U.S. 687, 690, 114 S.Ct. 2481 (1994).

To survive an Establishment Clause challenge, a practice must have a secular legislative purpose, its principal or primary effect must be one that neither advances nor inhibits religion, and it must not foster an excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-613, 91 S.Ct. 2105 (1971). Also, Croft v. Governor of Texas, 562 F.3d 735, 742 (5th Cir. 2009). In Lee v. Weisman, 505 U.S. 577, 587, 112 S.Ct. 2649, 2655 (1992), quoting Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355 (1984), the Supreme Court stated, "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way that 'establishes a [state] religion or religious faith, or tends to do so.'"

When evaluating whether a program advances or inhibits

5

religion, the court must pay particularly close attention to whether the challenged governmental practice has the purpose or effect of endorsing religion. <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 592, 109 S.Ct. 3086 (1989). The term "endorsement" has been defined as conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred, or promoting one religion or religious theory against another or even against the militant opposite. <u>County of Allegheny</u>, 492 U.S. at 593, and cases cited therein. The touchstone is neutrality, and it is only when the government acts with the ostensible and predominant purpose of advancing religion that it violates the central Establishment clause value of official religious neutrality. <u>Croft</u>, 562 at 742, citing <u>McCreary Cty. v. ACLU</u>, 545 U.S. 844, 860, 125 S.Ct. 2722 (2005)(statutes have an illegitimate purpose when the commonsense conclusion is that a religious objective permeates the government's action).

In his affidavit, Warden Wilkinson admits that, at the time of the call-out to attend church, all inmates were given a choice to attend church or be given a disciplinary report (Doc. 42, Ex. 3). Wilkinson further states, in his affidavit, that the reason the inmates were forced to attend church during the call out for church service was "to control inmate movement" (Doc. 42, Ex. 3). Wilkinson states in his affidavit that the call out for the library was on a set daily schedule and followed the call out to attend

6

church (Doc. 42).   Wilkinson states that, although passes are
issued to single call outs for individual inmates who require extra
time in the law library, such inmates must still wait to be called
out to the library (Doc. 42).   Wilkinson and Jones both state in
their affidavits (Docs. 42, 51) that the call out for the law
library is scheduled to follow the call out to attend church.
Wilkinson contends in his affidavit and defendants show in their
statement of undisputed facts (Doc. 42) that there is a policy at
WCC of "controlling inmate movement" by a call out system for
safety and security reasons (Doc. 42, Ex. 3).

Jones states in her affidavit that all inmate movement at WCC
must be monitored and preceded by a radio call, including movement
authorized by a pass (Doc. 51).   Joneses further state in her
affidavit that, since Allen exited his cell during the church call
out, he had to either go to church or receive a disciplinary report
(Doc. 51).   Jones contends in her affidavit that she acted in
compliance with WCC policy when she gave Allen a disciplinary
report for leaving his cell during call out for church service and
then refusing to go to church (Doc. 51).

Apparently, Allen violated the prison rules for scheduled
inmate movement and call outs by attempting to go to the law
library during the church call out, instead of going during the law
library call out.   As stated by defendants, Allen's library pass
did not give him the freedom to go to the law library whenever it

pleased him; he still had to wait until the call out for inmates wanting to go to the law library.

The security interests in controlling inmate movement are obvious.    Federal courts will not interfere with matters of discipline and control in state prisons except where paramount federal constitutional or statutory rights intervene.  See <u>Startti v. Beto</u>, 405 F.2d 858, 859 (5th Cir.), cert. den., 395 U.S. 929, 89 S.Ct. 1789 (1969).  In this case, the defendants' practice of only allowing inmates to move to other buildings or rooms during the call out for a particular activity in the building or room does not have the purpose or effect of endorsing religion.  Instead, it has a secular security purpose in controlling inmate movement at all times (not just during church services) and its  primary effect of controlling inmate movement at all times neither advances nor inhibits religion.  A coincidental effect of an inmate leaving his cell during church call out is to forcing the inmate to choose between attending church or receiving a disciplinary write-up.  The inmate movement control policy clearly does not not foster an excessive government entanglement with religion.

In the case at bar, Allen had to decide between attending a church service one time or receiving a disciplinary report because he left his cell during church call out; Allen was not forced to regularly attend church services.  Therefore, Allen has not carried his burden of demonstrating the inmate movement control policy

8

cause "an excessive government entanglement with religion" and has not shown his First Amendment rights were violated.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted and Allen's motion for summary judgment should be denied and his claim dismissed.

Transfer to the Louisiana State Penitentiary

Allen states in his affidavit (Doc. 34) that he was transferred from WCC to the Louisiana State Penitentiary in Angola, Louisiana, on March 17, 2008 in retaliation for helping Peter Alfred with Alfred's lawsuit and because this court ordered WCC officials to give Allen to have access to the law library.[3]

Defendants show in their statement of undisputed facts and documentary evidence (Doc. 42, Ex.) that, while Allen was incarcerated in WCC in May 2007, he was convicted in state court and sentenced to fifty-five years imprisonment at hard labor. Defendants state they are required by state regulations (Doc. 42, Ex.) to transfer Allen to the Louisiana State Penitentiary because

---

[3] Allen also alleges in his motion for summary judgment that Warden Wilkinson previously transferred him to Allen Correctional Center in 2002, also in retaliation for his helping other inmates with their lawsuits.  Obviously, this claim is brought too late. Section 1983 actions in Louisiana are governed by a one year prescriptive period.  La.C.C. art 3492; Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938 (1985); McGregor v. LSU Bd. of Supervisors, 3 F.3d 850, 864 (5th Cir. 1993), cert. den., 510 U.S. 1131, 114 S.Ct. 1103 (1994).  Also, Washington v. Breaux, 782 F.2d 553, 554 (5th Cir. 1986); Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979).

he was sentenced to more than fifty years, while WCC is only rated for inmates with sentences of thirty years or less; defendants state they did not transfer Allen in retaliation for his assisting inmate Peter Alfred.

A federal court will not direct a state's prison system concerning the specific prison in which a particular state prisoner must be incarcerated. See Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). It is settled that federal courts will not interfere with matters of discipline and control in state prisons except where paramount federal constitutional or statutory rights intervene. Startti v. Beto, 405 F.2d 858, 859 (5th Cir. 1969), cert. den., 395 U.S. 929, 89 S.Ct. 1789, 23 L.Ed.2d 247 (1969); LeBlanc v. Foti, 487 F.Supp. 272, 275 (E.D.La. 1980).

Pursuant to Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800 (1974), the decisions of a state prison administration are given wide discretion regarding the operation of prison facilities. There is no civil rights violation when the complaint is based solely on a transfer or lack of a transfer. Plaintiff must demonstrate a significant and purposefully different manner of treatment from other similarly situated prisoners. Luong v. Hatt, 979 F.Supp. 481, 483-84 (N.D.Tex. 1997), citing, Mikeska v. Collins, 900 F.2d 833, 836-37 (5th Cir.1990). See also, Sandin v. Conner, 515 U.S. 472, 478-79, 115 S.Ct. 2293, 2297, 132 L.Ed.2d 418 (1995).

10

Insofar as Allen alleges he was transferred to another prison by defendants, Allen has not stated a §1983 claim because he has not alleged a deprivation of his constitutional rights.  To state a retaliation claim, a claimant must allege both that the type of activity engaged in was protected under the constitution and that the state impermissibly infringed on his right to engage in the protected activity.  Rizzo v. Dawson, 778 F.2d 527, 531 (10th Cir. 1985), citing Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981).  Also, Hale v. Townley, 19 F.3d 1068, 1072-73 (5th Cir. 1994); Crowley v. Sinyard, 884 F.2d 804, 812 n.9 (5th Cir. 1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990).  Since Allen does not have a constitutional right to be confined in any particular prison and Allen can continue to work as an inmate paralegal at the Louisiana State Penitentiary, Allen has not alleged a deprivation of his constitutional rights and has not stated a claim for retaliation.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted and Allen's motion for summary judgment should be denied and his claim dismissed.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 42) should be GRANTED.

IT IS FURTHER RECOMMENDED that Allen's motion for summary judgment (Doc. 34) and motion for judgment on the pleadings (Doc. 61) should be DENIED and his action should be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of May 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

12